IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN D. HOLLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09CV849-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff John D. Holland brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") terminating his period of disability and ceasing his disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

In November 2001, plaintiff filed applications for disability benefits and supplemental security income. In a decision rendered on August 13, 2003, an ALJ determined that plaintiff had severe impairments of morbid obesity, congenital abnormality of the left eye, chronic lower back pain and hypertension. He found that the plaintiff was unable to perform basic work activities on a regular and continuing basis at a sedentary exertional level and, thus, that

he was disabled within the meaning of the Social Security Act. The ALJ recommended a continuing disability review after one year because of the possibility of improvement in the claimant's condition. (R. 61-72).

In August 2005, plaintiff completed a continuing disability form stating that there had been no change in his condition. (R. 103-112). He indicated that he had last obtained medical treatment from Dr. Samuel Banner at some time in 2004 for back pain, and that he was taking Ibuprofen and Aleve for his condition. (R. 104). The Disability Determination Services (DDS) sent plaintiff additional forms to complete and a letter asking him to contact DDS. When he did not do so, DDS attempted to reach plaintiff through third parties because he did not have a telephone.

DDS received no further information or contact from the plaintiff, and issued its decision finding that plaintiff's disability had ceased as of December 2005 and terminating his benefits. (R. 73-74, 113-16). Plaintiff appealed the decision in February 2006, but failed to appear for a hearing scheduled for July 3, 2006 before a disability hearing officer. The hearing officer upheld the cessation determination. (R. 75-80, 83-87, 118). Plaintiff requested a hearing before an ALJ. (R. 90-91). In two disability reports he completed for purposes of the appeal – one undated and the other dated October 3, 2006 – plaintiff indicated that he had become more depressed and more overweight, and that his back and eyesight were worse. He stated that he takes Ibuprofen and Aleve for pain and "can't drive," "can't work," and "can't socialize." Although he indicated that he either had or would seek additional medical treatment, he did not list any medical providers. He stated, "I have been in Jail since about

May and when I get out I need my benefits and will gladly and need to go to doctors." (R. 130-43).

The administrative hearing before the ALJ was originally set for August 23, 2007. Plaintiff appeared with counsel who had only recently been retained. Counsel requested that the judge consider ordering a consultative examination for the claimant, because the claimant had not been to a doctor. (R. 170). The ALJ noted that the consultative examinations from 2003 were in the record and indicated that he would proceed with those records only, since plaintiff had sought no other treatment, but would allow plaintiff's counsel thirty days to obtain medical records from the prison where plaintiff had been incarcerated from May 2006 through May 2007. The ALJ continued the administrative hearing at counsel's request.

By the time of the rescheduled hearing, on March 25, 2008, plaintiff's counsel had not submitted any medical records from the prison but had, instead, submitted treatment notes from plaintiff's September 12, 2007 office visit with Dr. O.D. Mitchum and a physical capacities evaluation form and clinical assessment of pain form completed by Dr. Mitchum on March 6, 2008. (R. 147-50, 179-80). Dr. Mitchum's September 2007 treatment notes are minimal, but – to the extent the notes are legible – he assessed obesity, blind left eye and hypertension and prescribed a one month supply of Valium to be taken at bedtime, apparently for plaintiff's complaint that his nerves are bad and he cannot rest at night. (R. 150). In the March 6, 2008 physical capacities evaluation, Dr. Mitchum noted that plaintiff can sit for two hours and stand and walk for up to one hour each during an 8-hour workday; that he can lift up to 25 pounds frequently and never lift more than that; that he can carry ten pounds

3

occasionally and never more; that he cannot use his hands for fine manipulation and cannot bend, squat, crawl, climb; and that he is totally restricted from unprotected heights, driving automotive equipment, and being around moving machinery. (R. 149). Dr. Mitchum further indicated, by circling responses on a clinical assessment of pain form, that plaintiff's pain is distracting to adequate performance of daily activities or work, that physical activity will greatly increase his pain to such a degree as to cause distraction from or total abandonment of tasks, and that side effects of prescribed medication would be severe and would limit effectiveness due to distraction, inattention or drowsiness, and that plaintiff has an underlying medical condition – Dr. Mitchum here wrote "weight" – which is consistent with the pain he experiences. (R. 147-48). At the hearing, the ALJ did not take testimony but, instead, offered to have plaintiff sent for consultative physical and psychological examinations, and recessed the hearing. (R. 177-86).

Psychologist Ann Jacobs, Ph.D., performed a consultative psychological examination on April 16, 2008. Dr. Jacobs assessed "Major Depression, Recurrent, Mild," and Crystal Meth Abuse and Marijuana Abuse (both in full remission by claimant's report). She rated his limitation as "moderate" in his ability to "[u]nderstand, remember and carry out detailed or complex instructions," and either mild or none in all other rated areas. (R. 156-57).

On April 22, 2008, Dr. Keith Vanderzyl performed a consultative physical examination. After his examination and x-rays of plaintiff's ankle and lumbar spine, Dr. Vanderzyl concluded that plaintiff has "[c]hronic low back pain secondary to a grade I going on grade II spondylolisthesis of L5 on S1 secondary to long standing isthmic defects with secondary foraminal stenosis," "marked exogenous obesity," "[r]ecurrent swelling and

stiffness of his ankle and foot joints . . . secondary to the obesity," "[h]ypertension," "[q]uestionable partial blindness in left eye and astigmatism in his right eye with recurrent headaches," and "[r]ight carpal tunnel syndrome, clinically." (R. 158-60). Dr. Vanderzyl concluded that plaintiff can stand and walk without limit, but can sit for less than one hour at a time; that he can lift and carry 20 pounds frequently and 50 pounds occasionally; that he can never balance, stoop, kneel, crouch, crawl or reach overhead, and only occasionally climb; that he can frequently drive automotive equipment but never work in extreme cold or heat, humidity, vibration, or high exposed places; that he cannot work in proximity to moving mechanical parts or be exposed to fumes, noxious odors, dust, mists, gases or poor ventilation. (R. 161-63).

The ALJ found, *inter alia*, that "as of December 1, 2005, there had been a decrease in medical severity of the impairments present at the time of the [favorable decision dated August 13, 2003] – *i.e.*, that "medical improvement" had occurred since the previous favorable decision, the "comparison point decision." The ALJ's ultimate conclusion was that the claimant's disability ended as of December 1, 2005 and that he had not again become disabled since that date. (R. 21-35). On July 22, 2009, the Appeals Council affirmed the ALJ's decision. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.

Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### "Medical Improvement"

The court concludes that the ALJ erred in applying the law regarding his required finding that "[m]edical improvement occurred as of December 1, 2005." (R. 30, Finding No. 6). The ALJ reached this determination by comparing plaintiff's residual functional capacity at the time of the earlier favorable decision with his current residual functional capacity. (R. 30-31). He found further support for this conclusion in the lack of evidence that plaintiff sought or received medical treatment on a regular basis or that he has taken any medications other than over-the-counter analgesics since December 1, 2005. (R. 31).

The Commissioner's regulations, however, explicitly require that the determination

of "medical improvement" must be made by comparing the current and prior *medical evidence*, not the current and prior residual functional capacities. See 20 C.F.R. § 404.1594(c)(1)("Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled *and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).*)(emphasis added); 20 C.F.R. §§ 416.994(b)(2)(i)(same); see also 20 C.F.R. §§ 404.1528, 416.928 (defining symptoms, signs and laboratory findings). Only after a finding of medical improvement (based on symptoms, signs and laboratory findings) does the analysis proceed to a comparison of a new residual functional capacity (assessed on the basis of the current severity of those impairments which were present at the point of the last favorable decision) with the residual functional capacity at the time of the comparison point decision.  This RFC comparison forms the basis for a finding on whether the "medical improvement" is related to ability to work.  However, the regulation provides that "[u]nless an increase in the current residual functional capacity is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will not be considered to be related to [the claimant's] ability to do work."  20 C.F.R. § 404.1594(c)(2), § 416.994(b)(2)(ii), (iii).

      The evidence considered by the ALJ who issued the favorable decision in 2003 is listed (R. 70-71), but is not included in the record before the court.  It appears that the ALJ for the disability cessation decision under review had that evidence before him at the time

of the first scheduled administrative hearing on August 23, 2007 (see R. 70-71, 169-71). However, when he issued a decision in the present case, he indicated that "[t]he undersigned is apparently not privy to all of the medical and other evidence upon which the comparison point decision was made[.]" (R. 26). Thus, it is apparent that the ALJ did not consider the medical evidence forming the basis for the earlier favorable decision in reaching his conclusion of "medical improvement."

The previous favorable decision is in the record, and the court has considered whether the ALJ's summary of the evidence is an adequate substitute for the actual medical evidence – *i.e.*, whether the ALJ's error in failing to consider the previous medical evidence is harmless. There is no basis in the previous decision or the new medical evidence to support a conclusion of medical improvement as to plaintiff's impairments of obesity,[1] hypertension[2] or vision.[3] As to plaintiff's back impairment, although the precise degree of limitation is not recorded in the decision, the first ALJ wrote that Dr. Banner's examination revealed that plaintiff's lower back had "limited range of motion, especially when attempting to bend."

---

[1] Plaintiff weighed 310 pounds in September 2007 (R. 150). The previous favorable decision does not state plaintiff's weight. (See R. 65-69).

[2] Plaintiff's blood pressure reading was 130/90 in September 2007, when Dr. Mitchum diagnosed hypertension, and 166/88 in April 2008, when Dr. Vanderzyl indicated that "he has no hypertension today on testing" but, nevertheless, listed hypertension among his impressions. (R. 150, 158, 160, 166). The first ALJ found that plaintiff then suffered from hypertension, and the decision does not include any indication of any blood pressure reading. (See R. 65-69).

[3] The first ALJ found that plaintiff had a severe impairment of "congenital abnormality of the left eye (R. 68), apparently concluding that the abnormality resulted in a work-related functional limitation, but the opinion does not indicate the level of plaintiff's vision in his left eye and the RFC does not include functional limitations related to plaintiff's vision. (See R. 65-66). Plaintiff claims to be "blind in his left eye since birth" (R. 158) and, although his report does not suggest that he performed a vision examination, Dr. Vanderzyl assessed "questionable partial blindness in left eye." (R. 160). Dr. Mitchum noted "[left] eye - vision out." (R. 150).

(R. 66). Dr. Vanderzyl, in his consultative examination in April 2008, found a "full active range of motion in each segment [of the spine] without pain, tenderness of deformity." (R. 159; see also R. 164). Medical improvement may be shown by decreased medical severity of any one impairment present at the time of the comparison point decision. (See POMS DI 28010.015(C)(1)(d)). However, an assessment of decreased medical severity of an impairment requires consideration of *all* relevant symptoms, signs or laboratory findings. See DI 28010.015(C)(3)(a)("In considering prior and current symptoms, signs and laboratory findings, consider all of the evidence relevant to a disability determination at each point."); Although the first ALJ did not discuss it in his decision, he had before him a range of motion form completed by another consultative examiner, Dr. Davis Arnold. (See R. 71). As noted above, it is not apparent from the previous decision how "limited" plaintiff's range of motion was at the time of Dr. Banner's assessment. Additionally, the earlier favorable decision does not state whether the consultative examination reports of either Dr. Banner or Dr. Arnold included results of x-rays. If they did, the ALJ would have been required to compare them with the x-ray results set forth in Dr. Vanderzyl's report (see R. 159) in assessing medical improvement.

In making his finding of "medical improvement," the ALJ relied on – in addition to the RFC comparison – "credible non-medical evidence of record, including the claimant's ongoing work activity,"[4] and the fact that there was no documentation showing that "the claimant has sought or received any medical treatment for any medical condition on a regular

---

[4] The ALJ did not specify the "other credible non-medical evidence" he considered on the issue of medical improvement.

basis, nor has he taken any medications, other than over-the-counter analgesics, since December 1, 2005." (R. 30-31). It appears that – while he did not explicitly do so – the ALJ may have intended to incorporate his evaluation of plaintiff's subjective symptoms into his medical improvement finding and to conclude that plaintiff's current "symptoms" attributable to his back impairment are not as serious as his "symptoms" at the time of the favorable decision.

However, the court declines to construe the ALJ's statement to include this particular determination because the ALJ failed to develop the record regarding plaintiff's symptoms. While the ALJ had access to plaintiff's subjective complaints to Dr. Mitchum and Dr. Vanderzyl, and to plaintiff's very limited statement in the disability report that his "[b]ack is worse," and "[b]ack pain - can't work" (R. 137, 141), the ALJ did not take any testimony at the hearing regarding plaintiff's symptoms. He took only limited testimony about the physical requirements of plaintiff's work activities,[5] with the bulk of the testimony being directed to the issue of whether plaintiff's work was "gainful." (See R. 187-224). The ALJ terminated the hearing when he determined that he had elicited enough testimony to support a finding that plaintiff is engaging in substantial gainful activity, erroneously concluding that he could not move on to "step two." (R. 223).[6,7]

---

[5] Plaintiff testified that he lives in a small trailer on the property where his brother-in-law stores equipment for his septic tank business, that he "looks after" the equipment to make sure no one steals it, that he runs errands, and that he rides with his brother-in-law to the job site between one and three days a week, but does nothing at the job site other than "sit around and talk." (R. 198-203).

[6] While the issue of substantial gainful activity is a consideration on cessation of Title II disability benefits, it is not a factor in the continuing disability review of Title XVI SSI benefits. Compare 20 C.F.R. § 404.1594(f)(8-step sequential evaluation for evaluating continuing disability under Title II; step one determination that plaintiff is engaging in substantial gainful activity and that any applicable trial work period

10

Finally, in addition to providing that the "medical improvement" determination must be made by comparing the current and prior medical evidence, the Commissioner's regulations prescribe the procedure that an adjudicator must follow if the "[p]rior file cannot be located." 20 C.F.R. § 404.1595(C)(3)(v). If the file cannot be located and the claimant is found to be able to engage in substantial gainful activity, the adjudicator is to determine whether an attempt should be made to reconstruct those portions of the file which were relevant to the earlier favorable decision, including "medical evidence from treating sources and the results of consultative examinations." (Id.). If the adjudicator either cannot or decides not to attempt to reconstruct the relevant portions of the prior record, the Commissioner's regulation provides that "medical improvement cannot be found." (Id.).[8]

In summary, to find the ALJ's failure to analyze "medical improvement" by

---

has been completed results in conclusion that disability has ended) with § 416.994(b)(5)(7-step sequential evaluation for continuing disability under Title XVI; omitting consideration of substantial gainful activity).

[7] Plaintiff argues that, by failing to question the plaintiff regarding his impairments or symptoms, the ALJ failed in his duty to develop the evidence. The Commissioner contends that this failure does not constitute reversible error because plaintiff was represented by counsel at the hearing and (citing the disability report at R. 130-43), because it is "unlikely that the testimony would have changed the ALJ's decision, because evidence of plaintiff's limitations was already in the record." (Commissioner's brief, p. 14). As noted above, plaintiff's statements in the disability report regarding his back impairment were, in their entirety – "[b]ack is worse" and "[b]ack pain - can't work[.]" (See R. 130-43). Additionally, while the Brown case cited by plaintiff's new attorney – as the Commissioner notes –  involved an unrepresented claimant, the Eleventh Circuit reiterated the well-settled law that "[w]hether or not the [claimant] is represented, the ALJ still has a duty to develop a full and fair record." Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995)(citation omitted); see also Sims v. Apfel, 530 U.S. 103, 110-11 (2000)("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."). While the ALJ's error in failing to elicit testimony from the plaintiff regarding his symptoms unnecessarily complicates review of this case, it is not his only error and is not the sole basis for remand.

[8] The ALJ's decision does not reflect that he was aware of his obligation to consider whether reconstruct the file or of the consequences of his failure to do so.

11

comparing the current and prior medical evidence to assess whether there have been improvements in the symptoms, signs and/or laboratory findings pertaining to plaintiff's back impairment to be "harmless error," the court would be required to: (1) infer that the ALJ compared plaintiff's symptoms, despite the ALJ's failure to elicit testimony from the plaintiff regarding those symptoms; (2) assume that there were no x-ray results in the record before the first ALJ or that, if there were such results, speculate that they would not have changed the finding of medical improvement; and (3) most significantly, ignore the Commissioner's directive that "medical improvement cannot be found" where relevant portions of the prior file have not be reconstructed, even if plaintiff is now able to perform substantial gainful activity.  The court declines to find that the ALJ's error is harmless.  In the absence of a legally sufficient finding on the threshold issue of  "medical improvement," the ALJ's conclusion on plaintiff's Title XVI claim cannot be affirmed.

### Substantial Gainful Activity

At step one of the sequential analysis of whether plaintiff has a continuing disability for purposes of his Title II benefits, the ALJ may find that disability has ceased if the plaintiff is engaging in substantial gainful activity and any applicable trial work period has been completed.  20 C.F.R. § 404.1594(f)(1).  In this case, the ALJ made a step one finding that "[a]s of December 1, 2005, the date the claimant's disability ended, the claimant had engaged in substantial gainful activity."  (R. 23).  He wrote:

> In applying the principle of the trial work period to the present case, as required by 20 CFR 404.1594(f)(1), the undersigned notes that the determination that the claimant's disability ended on December 1, 2005 *was based on medical improvement* and was unrelated to any work activity

> performed by the claimant. Pursuant to 20 CFR 1592(e), the claimant's trial work perod ended in the month in which new evidence, other than evidence relating to any work activity, showed that he was not disabled. Therefore, since the claimant's trial work period ended on the date his disability ceased, December 1, 2005, the claimant was not entitled to a trial work period thereafter.

(R. 25)(emphasis added). Thus, even assuming that the ALJ correctly concluded that the work plaintiff performed for his brother-in-law after plaintiff's May 2007 release from prison constituted substantial gainful activity, and further assuming that plaintiff's incarceration "for over twelve months" supports a finding that he has been engaging in substantial gainful activity since December 1, 2005, the ALJ's finding on the end date of the trial work period rests on his conclusion that plaintiff's disability ended as of December 1, 2005 due to medical improvement. As discussed above, the ALJ's medical improvement finding is flawed. It cannot, therefore, support the ALJ's finding that plaintiff's disability ended on December 1, 2005 for purposes of avoiding application of the nine-month trial work period which would otherwise be permitted during a period of disability. See 20 C.F.R. § 404.1594(e)(2). Thus, the ALJ's finding that plaintiff's disability ceased on December 1, 2005 for purposes of plaintiff's Title II benefits cannot be independently affirmed on the basis of substantial gainful activity. Further, because of the ALJ's error in assessing "medical improvement," the Title II decision cannot be upheld on the basis of the ALJ's decisions on the later steps of the sequential evaluation.

### Ability to Perform Past Relevant Work

In his RFC assessment for December 1, 2005 (which takes into account only those impairments which existed at the time of previous favorable decision) and his RFC

13

assessment for the period beginning on December 1, 2005 (which takes into account any impairments which developed after the comparison point decision), the ALJ concluded that, *inter alia*, "the claimant can never climb [or] crouch." (R. 32). His determination that plaintiff ceased to be disabled rests on his finding that plaintiff's RFC does not preclude performance of his past relevant work as a truck driver, as that job is generally performed in the national economy, as set forth in the Dictionary of Occupational Titles, DOT Classification Number 905.663-014. (R. 34). However, the job of "Truck Driver, Heavy," described in the DOT classification cited by the ALJ, requires climbing "occasionally" – up to 1/3 of the time – and also requires "occasionally" crouching. See *Dictionary of Occupational Titles*, Classification Number 905.663-014. Thus, even assuming that the ALJ's RFC determination is supported by substantial evidence, his finding that plaintiff can perform his past relevant work as a truck driver, as that work is generally performed in the national economy, is not so supported.

**Ability to Perform Other Work**

The ALJ's RFC determinations completely preclude climbing, crouching, crawling, working in proximity to moving mechanical parts and working in high, exposed places. They further include limitations to occasional balancing, stooping and kneeling. (R. 31, 32). These are nonexertional limitations (see 20 C.F.R. § 404.1569(c)(v), (vi)) which – without an explicit finding that they do not preclude a wide range of work at the medium exertional level of work – preclude exclusive reliance on the medical-vocational guidelines to support a finding that an individual can perform "other work" at step eight of the Title II sequential

evaluation or step seven of the Title XVI sequential evaluation. See 20 C.F.R. §§ 404.1594(f)(8); 416.994(b)(5)(vii); Phillips v. Barnhart, 357 F.3d 1232, 1243-44 (11th Cir. 2004). The ALJ did make an express finding that plaintiff "is able to perform a wide range of work activities at the medium exertional level," although this finding appears in his earlier discussion of "medical improvement," at a step of the sequential evaluation which is actually required to take place before the ALJ determines RFC (see R. 30-31). However, the ALJ's finding that a complete inability to climb, crouch, crawl, work in proximity to moving mechanical parts, or work in high, exposed places and a limitation to only occasional balancing, stooping and kneeling does not significantly erode the occupational base represented in the grids must be supported by substantial evidence. The ALJ does not cite any vocational evidence or authority of any sort in support of his conclusion. In the absence of vocational support, the ALJ's conclusion that plaintiff's RFC does not preclude a wide range of medium work – even assuming that the RFC is itself supported by substantial evidence and proper application of the law – is not based on substantial evidence.[9] See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992)(reversing due to ALJ's reliance on the grids, and concluding that expert testimony was required to support the ALJ's determination that the claimant could perform a wide range of light work, where his RFC

---

[9] Earlier in the sequential analysis, in his findings on RFC, the ALJ cites SSR 83-10. (R. 31, 32). That ruling confirms that the ALJ erred in relying on the grids. See SSR 83-10 ("The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)"). The ALJ determined that the plaintiff can stoop only occasionally, and that he can never crouch.

15

precluded work around unprotected heights or dangerous moving machinery). This deficiency renders the ALJ's "other work" finding invalid, as it also is not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED and this action REMANDED to the Commissioner for further proceedings consistent with this memorandum of opinion.[10]

Done, this 21st day of May, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[10] The court does not intend to suggest that plaintiff is entitled to a finding of continuing disability, but here holds only that the ALJ did not follow the requirements of applicable law and regulations in reaching his conclusions.